# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

————————————————

KENDA FERGUSON,

      Plaintiff,

vs.                                                                            2:22-cv-00373-KWR-KRS

STATE OF NEW MEXICO CORRECTIONS
DEPARTMENT CENTRAL OFFICE ADMINISTRATION,
*ET AL.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed on May 31, 2023.  Doc. 43.  Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is **GRANTED IN PART**.  The Court grants summary judgment as to Counts I, II, and III.  Plaintiff agreed to dismiss Counts VIII and IX.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims, remanding them to the Ninth Judicial District Court, Curry County, New Mexico.

## BACKGROUND

This case is an employment discrimination dispute arising out of Plaintiff's employment with the New Mexico Corrections Department ("NMCD").  Plaintiff Kenda Ferguson was employed by NMCD from August 12, 2012, until she resigned on December 8, 2020.  *See* Doc. 43, Ex. A, ¶ 2.  Following her resignation, Plaintiff sued Defendants in state court on April 8, 2022, alleging:

Count I:      Hostile Work Environment

Count II:     Discrimination

Case 2:22-cv-00373-KWR-KRS   Document 61   Filed 10/17/23   Page 2 of 20

Count III:      Sexual Discrimination

Count IV:      Intentional Infliction of Emotional Distress

Count V:       Defamation

Count VI:      Retaliation

Count VII:     Failure to Follow Procedures

Count VIII:    Misuse of Process

Count IX:      Malicious Use of Process

Count X:       Negligence

One of the initial Defendants, City of Clovis, removed this case to this Court.  *See* **Doc. 1, at 1**.

## FACTS[1]

On August 12, 2012, NMCD hired Plaintiff as an adult probation and parole officer.  *See*

**Undisputed Material Fact ("UMF") 1**.  Plaintiff remained employed by NMCD until her resignation

on December 8, 2020.  *Id*.  Throughout much of her employment, Plaintiff performed her job

satisfactorily.  **UMF 2.**

Beginning in 2018, Plaintiff began reporting late to work and subsequently received four verbal

warnings from supervisors regarding excessive tardiness.  *Id*.  (Plaintiff did not genuinely dispute

Defendants' asserted fact with citation to the record).   From 2019 to 2020, Plaintiff arrived to work late

at least thirty-one times.  *Id*.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation

to the record).

On February 18, 2020, Plaintiff received a Letter of Counseling ("LOC") from her NMCD

supervisor, Isabel Lucero, finding that Plaintiff violated the Code of Ethics, Employee Reporting

---

[1] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record.  Disputes concerning the facts are noted.

Responsibilities, Calculation of Hours Policy, and the Overtime Policy.  **UMF 3**.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  Plaintiff had failed to obtain prior authorization to work past 5:00 PM, as required by NMCD policy; she displayed disrespectful tones and attitudes towards her supervisor.  **UMF 4**.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  The LOC required Plaintiff to review and follow the Code of Ethics, Employee Reporting Responsibilities, Calculation of Hours Policy and the Overtime Policy. **UMF 10**.  The LOC stated it would not be placed in her personnel file.  *Id*.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).

On September 26, 2020, Plaintiff was scheduled to work from 8:00 AM to 5:00 PM but did not arrive until 9:54 AM.  **UMF 5**.  Plaintiff did not call reporting that she would be late and on that same day, left work at approximately 5:26 PM without prior authorization from supervisors to work beyond 5:00 PM.  *Id*.  On October 8, 2020, Supervisor Lucero confirmed via video surveillance of the Clovis Probation/Parole Office that Plaintiff did not report to work on September 26, 2020, until 9:54 AM and leave until 5:26 PM.  **UMF 6**.

On November 19, 2020, Regional Manager Pautler sent a Letter of Reprimand ("LOR") to Plaintiff for arriving to work two hours late and working past 5:00 PM without supervisory authorization on September 26, 2020.  **UMF 7**.  Plaintiff grieved the LOR; however, her grievance was withdrawn upon her resignation.  **UMF 8**.  Plaintiff was aware she had the right to petition for the removal of the LOR from her personnel file.  **UMF 9**.  The LOR outlines a progressive system of sanctions for instances of absent without leave ("AWOL"), with the first offense receiving a written reprimand, and suspension occurring after the second offense.  **UMF 10**.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  NMCD Policy CD-010100 establishes four levels

of grievance procedures for employees to seek grievance resolution.  **UMF 33**.  Grievants are required to complete all four levels unless exceptions are given.  *Id*.

In November 2020, Sergeant L. Riddle, narcotics agent of the Clovis Police Department, sent a report to Defendant Susan Pautler regarding allegations of misconduct that Plaintiff assisted her brother using the National Criminal Information Center ("NCIC") system, a potential violation of NMCD policy.  **UMF 11**.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  Upon receiving this report, Defendant Pautler contacted Defendant Deputy Director Melanie Martinez, who suggested Pautler file a report with NMCD's Office of Professional Standards ("OPS").  **UMF 12**.  Investigator Stephanie Vincente then conducted an OPS investigation into the allegations.  *Id*.  No one outside of OPS knew of the investigation into Plaintiff.  *Id*.  Plaintiff was placed on paid administrative leave during the OPS investigation.  **UMF 13**.  While on paid administrative leave, Plaintiff was required to report to work every day during her regularly scheduled hours.  *Id*.

During the OPS investigation, Investigator Vincente interviewed Plaintiff on December 8, 2020, with Plaintiff's union representative, Robert Trombley, present.  **UMF 14**.  Plaintiff's interview with Investigator Vincente was not completed.  **UMF 15**.  During the interview, Union Representative Trombley recommended to Plaintiff that she resign from NMCD.  *Id*.  Plaintiff resigned on December 8, 2020.  *Id*.  Prior to her resignation, no one within NMCD had told Plaintiff that she would be terminated.  *Id*.  Subsequently, Plaintiff filed an EEOC charge in December 2020.  *Id*.

Plaintiff claims that Defendant Lucero spoke with individuals outside of NMCD regarding the OPS investigation, thereby defaming her.  **UMF 16**.  Plaintiff has no personal knowledge that Defendant Lucero discussed the OPS investigation with anyone outside of NMCD.  *Id*.  In addition, Plaintiff claims that NMCD employee Christy Mueller told individuals Plaintiff was dealing drugs on her brother's behalf.  *Id*.  Plaintiff has not identified who Christy Mueller spoke with.  *Id*.  Plaintiff also

claims that members of the Clovis community approached her after hearing about the OPS investigation. *Id*. Plaintiff cannot remember or identify the names of specific people that approached her and has admitted to being unable to do so. *Id*. (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).

Plaintiff claims that two of her coworkers, Philip Dominguez and Weston Peasnal, arrived late to work and were not disciplined. **UMFs 18 and 19**. Philip Dominguez was not late to work on the date in question, September 26, 2020. Ex. D, Dep. Of S. Pautler 26:23-27:11. (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record). Weston Peasnal received a verbal reprimand for a late arrival on an unspecified date and corrected his behavior. **UMF 19**. (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).

Plaintiff claims that COVID-19 policies were unequally enforced between men and women during out-of-state travel. Specifically, Plaintiff alleges that Philip Dominguez violated COVID-19 policies and was not disciplined, whereas Plaintiff was required to quarantine. Ex. 7 at 2. When NMCD employees travelled out of state during the COVID-19 pandemic, all were required to provide COVID tests before returning to work regardless of gender. **UMF 20**. Such policies were enforced equally between men and women. *Id*. (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).

Plaintiff claims that she was subject to a hostile work environment in 2013 when supervised by Susan Pautler. **UMF 22**. Plaintiff was aware that hostile work environments were not permitted at NMCD and knew of policies and procedures to report violations. **UMF 21**. Plaintiff claims she was promised and did not receive a drug court officer position because she cooperated with an internal investigation. **UMF 22**. No one told Plaintiff she did not receive the drug court officer position because of her testimony. *Id*. The alleged hostile work environment ended when Plaintiff requested and was

transferred to the Portales NMCD location in 2014.  *Id.*; Ex. G, Dep. Of K. Ferguson 125:9-12. (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  Plaintiff never filed a complaint regarding sexual discrimination, retaliation, or a hostile work environment in accordance with NMCD's policies and procedures.  **UMF 23**.

Plaintiff alleges that during her tenure at NMCD, Defendant Susan Pautler contacted her outside of work to discuss Plaintiff's relationship and personal life.  **UMF 27**.  Plaintiff claims this was irrelevant and interfered with her personal relationship with her then-boyfriend, Albert Cena.  *Id.* Plaintiff had previously introduced these personal issues to NMCD's Clovis Probation and Parole Office.  **UMF 28**.  (Plaintiff did not genuinely dispute Defendants' asserted fact with citation to the record).  Defendant Pautler contacted Plaintiff after-hours and asked permission to discuss Plaintiff's relationship issues with her.  *Id.*  Defendant Pautler reached out to Plaintiff out of concern and support and did not share this information with a third-party.  *Id.*  Subsequently, Defendants Pautler and Lucero suggested Plaintiff seek counseling upon learning of allegations of physical abuse and a civil suit between Plaintiff and Cena.  **UMF 29**.  Plaintiff found the suggestions by Pautler and Lucero to seek counselling to be insulting.  *Id.*  Plaintiff contends that Defendants' actions outside of work and her claims in the aggregate caused depression, which led her to seek counseling.  **UMF 30**.  This, Plaintiff argues, amounts to intentional infliction of emotional distress.

Following her resignation from NMCD, Plaintiff received a job offer from Cibola County Correctional Center, which was subsequently rescinded.  **UMF 26**.  Plaintiff alleges this rescission was due to prior work history.  *Id.*  The Cibola County Correctional Center stated that this recission was due to Plaintiff's "employment," without elaborating further.  *Id.*  Neither Defendants Susan Pautler nor Isabel Lucero provides employment references on behalf of former employees.  **UMFs 24 and 25**.  Both refer employment inquiries to Human Resources.  *Id.*

The Collective Bargaining Agreement between AFSCME Council 18 and the State of New

Mexico states that the employer may impose disciplinary action or issue a notice of contemplated action,

"no later than forty-five (45) days after it acquires knowledge of the employee's misconduct for which

the disciplinary action is imposed, unless facts and circumstances exist which require a longer period of

time." **UMF 32**.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is

material if it could have an effect on the outcome of the suit.  *See Smothers v. Solvay Chemicals, Inc.*, 740

F.3d 530, 538 (10th Cir. 2014).  "A dispute over a material fact is genuine if a rational jury could find in

favor of the nonmoving party on the evidence presented."  *Id.*  (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206,

1215 (10th Cir. 2013)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the

moving party meets its initial burden, the non-movant cannot "rest on the pleadings[,] but must set forth

specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."  *See*

*Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial," and the moving party will be entitled to judgment as a matter of law.  *See Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323 (1986).

On summary judgment, a court is to view the facts in the light most favorable to the non-moving

party and draw all reasonable inferences in favor of that party.  *See Shero v. City of Grove*, 510 F.3d 1196,

1200 (10th Cir. 2007).  A court cannot weigh the evidence and determine the truth of the matter, but

7

instead, must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## DISCUSSION

Plaintiff argues that under Title VII of the Civil Rights Act of 1964 and the New Mexico Tort Claims Act, she is entitled to damages due to actions taken by the New Mexico Corrections Department and the listed Defendants. Plaintiff asserts that during her employment with NMCD and following her resignation, Defendants engaged in conduct causing "damages resulting from the hostile work environment, discrimination, sexual discrimination, intentional infliction of emotional distress, slander, libel, failure to follow procedures, misuse of process, malicious abuse of process and negligence." Doc 47, Ex. 9, at 2. Defendants assert Plaintiff has failed to demonstrate a prima facie case for each claim and move for summary judgment, dismiss all Plaintiff's claims against Defendants with prejudice, and grant such further relief as proper. Doc. 43, MSJ, at 27.

## I.     Hostile Work Environment – Count I

Plaintiff brings her hostile work environment claim via Title VII of the Civil Rights Act of 1964 29 CFR § 1604.1-11. Doc. 59, at 1.[2] Plaintiff asserts in Count I that Defendants created an actionable hostile work environment, stating, "Defendant(s) breached their duty of care to Plaintiff by their arbitrary and capricious decisions to the selective enforcement of rules and procedures. They did this while ignoring the same violations of others within their responsibility of oversight." *See* Complaint, at 5.

---

[2] Plaintiff does not explicitly state which form of discrimination she is alleging under her hostile work environment claim, but states her claim is being brought under 29 CFR § 1604.1-11, which governs sex discrimination. *See* Doc. 59, at 1. As such, the Court will address her hostile work environment claim as alleging sex discrimination. Furthermore, Plaintiff has already sought a federal administrative remedy regarding this claim via an Equal Employment Opportunity Commission ("EEOC") complaint, asserting a federal right, and included this filing in her Complaint. Therefore, this Court has federal question jurisdiction over Plaintiff's claims in Counts I, II, and III. *See Kuri v. Matrix Ctr.*, 647 Fed. Appx. 867, 868 (10th Cir. 2016); citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 678, 126 S. Ct. 2121, 2123, 165 L. Ed. 2d 131 (2006); *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307 (5th Cir. 2014).

For a Title VII hostile work environment claim, Plaintiff must present sufficient indirect evidence to establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221-22 (10th Cir. 2015). Under that framework, Plaintiff must show that, "[1] she is a member of a protected class, [2] she suffered an adverse employment action, and [3] the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015); *Kendrick v. Penske Transp. Servs.*, Inc., 220 F.3d 1220, 1227 (10th Cir. 2000); *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). Once established, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). If Defendant does so, summary judgment is warranted unless Plaintiff shows that Defendant's proffered reason is pretextual. *Id.*, at 1143; *Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir. 2005).

While sex is a protected class under Title VII, Plaintiff did not suffer any adverse employment actions. Adverse employment actions are, "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). An adverse action must be more serious than a mere inconvenience or an alteration of job responsibilities. *Id*. Reprimands are considered adverse employment actions only if they, "affect[] the likelihood that the plaintiff will be terminated, undermine[] the plaintiff's current position, or affect[] the plaintiff's future employment opportunities." *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005).

To establish a prima facie hostile work environment claim and overcome summary judgment, "the plaintiff must show (1) he was discriminated against because of his sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020).  Hostile work environment claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Often, such hostile work environments are those, "permeated with 'discriminatory intimidation, ridicule, and insult." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1096 (10th Cir. 1999) quoting *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998).  "Abusiveness" or "hostility" of a work environment must be determined through looking at the totality of the circumstances, which can include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

In her Complaint, Plaintiff alleges instances of discrimination involving the preferential treatment of male employees over work-related misconduct point to a hostile work environment. Complaint, at 6.  Specifically, Plaintiff alleges that male coworkers, Phillip Dominguez and Weston Peasnal, were not disciplined over COVID-19 policy and tardiness violations because of their sex.

In her deposition testimony, Plaintiff stated that the hostile work environment incident in question occurred in 2013 and terminated in 2014 with her transfer to another NMCD facility.  Doc. 43, Ex. G, K. Ferguson Dep., 122:14-20.  Plaintiff claims that in 2013, while under Regional Manager Susan Pautler, Ferguson was passed over for the position of drug court officer because she initially

refused and then ultimately agreed to testify in an NMCD investigation involving Pautler.  *Id.*, at 122:21-123:25.  Plaintiff states she was then denied the drug court officer position.  *Id.*

Lastly, Plaintiff cites the violation of policies and procedures by NMCD regarding the 2020 Letter of Reprimand as creating a hostile work environment.  *Id.*

Defendants assert that Plaintiff's hostile work environment claim dates to 2013, was resolved in 2014, and occurred years before Plaintiff's violation of NMCD policies and subsequent resignation in 2020.  Doc. 43, MSJ, at 16.  Defendants further contend that COVID-19 and employee conduct policies were enforced equally among the sexes.  While employed at NMCD, Plaintiff never filed a hostile work environment complaint.  *Id.*  Thus, "[u]nder the totality of the circumstances, a rational jury could not find this conduct was severe enough or frequent enough to be physically threatening or humiliating, or to unreasonably interfere with an employee's work performance."  *Id.*  Defendants assert that even if these instances of discrimination are true, the discrimination was insufficiently severe or pervasive as to alter the conditions or terms of employment, thereby failing as a hostile work environment claim.  *Id.*, at 16-17.

The Court rejects Plaintiff's arguments.  Notably, the record is devoid of any material facts that support Plaintiff's allegation of a hostile work environment on the part of Defendants.  Plaintiff has not demonstrated that she was discriminated against because of a protected status, such as sex.  *Throupe v. Univ. of Denver*, 988 F.3d at 1251.  Plaintiff has not shown frequent, separate acts, that are severe, physically threatening, or humiliating instances of discriminatory conduct, let alone conduct that interferes with an employee's work performance so far as to alter the conditions of employment.  *Harris v. Forklift Systems, Inc.*, 510 U.S. at 23.

Plaintiff has not provided evidence regarding the claimed inconsistent policy enforcement against two male coworkers, Phillip Dominguez and Weston Peasnall.  Nothing in the record supports a

finding of disparities in policy enforcement between sexes or discrimination against a protected class. Both COVID-19 and conduct policies were enforced uniformly across employees regardless of sex. If evidence of discrimination existed, Plaintiff has not shown that this in any way adversely altered the terms of her employment or constituted adverse employment actions.

Plaintiff has not provided evidence that the 2013-14 incident regarding her transfer and denial of the drug court officer position occurred because of discrimination based on sex. Plaintiff admitted the 2013 incident terminated in 2014, roughly six years before her resignation. She requested the location transfer and continued at NMCD until her resignation in 2020 without filing a hostile work environment complaint. She has not presented evidence that this incident altered the terms of employment. Plaintiff's change of location and alleged denial of the drug court officer position do not qualify as adverse employment actions. Had Plaintiff been offered and denied this position as she claims, she admitted that this promised position was not a promotion, disqualifying it as a failure to promote and therefore, an adverse action. Doc. 43-7, Ex. G, K. Ferguson Dep., 123:5-9.

Regarding the Letters of Counseling and Reprimand that Plaintiff received, these letters were issued according to standardized procedures to address Plaintiff's habitual violation of NMCD's Code of Ethics, Employee Reporting Responsibilities, Calculation of Hours Policy, and the Overtime Policy. Plaintiff arrived to or departed late from work on at least thirty-one occasions from 2019 to 2020 despite regular trainings and warnings. The record is devoid of evidence to support a finding that NMCD's actions were motivated by discrimination. These actions were understandably taken to address policy violations in the workplace. Furthermore, the letters were not so severe as to alter the terms of employment – they merely served as verbal warnings that if her behavior continued, further disciplinary action may be necessary. Plaintiff does not offer evidence that these letters affected the likelihood of termination, undermined her position, or affected future employment opportunities. Therefore, these

reprimands cannot be considered adverse employment actions. *Medina v. Income Support Div., New Mexico*, 413 F.3d at 1137.

If adverse employment actions, Plaintiff has not presented evidence that these actions suggest or give rise to an inference of discrimination. *Bennett v. Windstream Communications, Inc.*, 792 F.3d at 1266*; Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d at 1227.

Looking at the totality of the circumstances, Plaintiff has failed to demonstrate discrimination in each of these instances. Moreover, she has not established discrimination against a protected status, such as sex. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d at 1174. No evidence presented suggests a series of separate acts permeated with hostility, insult, or abusiveness towards Plaintiff. Nothing in the record indicates that this discrimination was so severe or pervasive as to alter the terms or conditions of her employment. *Id.* Plaintiff has not established evidence supporting her hostile work environment claim on both essential elements of the claim.

Under the *McDonnell Douglas* framework, if Plaintiff established a prima facie case, the burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse action(s). Plaintiff has not presented evidence establishing differences in the enforcement of COVID-19 or timeliness policies, but rather both were enforced equally. The 2014 transfer in question occurred at the request of Plaintiff, and the intraoffice position offer revocation was not a promotion and has not been shown by Plaintiff to have been motivated by sex discrimination. The 2020 Letters of Counseling and Reprimand did in fact serve legitimate, nondiscriminatory reasons. Both letters served to ensure compliance with NMCD's Employee Code of Conduct and Ethics. This was especially warranted here, given Plaintiff's pattern of violating NMCD policy. Therefore, NMCD can articulate legitimate, nondiscriminatory reasons for these actions and summary judgment is warranted. Plaintiff has not established that NMCD's actions were pretextual.

As such, Plaintiff cannot overcome summary judgment on this claim.  There is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.  *Id*.  The Court grants summary judgment on Count I.

**II and III.       Discrimination and Sexual Discrimination – Counts II and III[3]**

Plaintiff brings her discrimination claims via Title VII of the Civil Rights Act of 1964 29 CFR § 1604.1-11.  Doc. 59, at 1.  Plaintiff claims in Counts II and III that Defendants discriminated against her on the basis of sex.  Plaintiff has not put forth evidence of sex discrimination or any other form of discrimination.  Plaintiff alleges disciplinary process disparities between male and female employees amounted to sex discrimination.  Doc. 43, Ex. G, Dep. Of K. Ferguson, 133:2-4; Doc. 46, at 10.  Specifically, Plaintiff alleges that male coworkers, Phillip Dominguez and Weston Peasnal, were treated differently than her regarding COVID-19 policy and tardiness because of their sex.  Plaintiff further cites the Letters of Counseling and Reprimand issuance process and the entirety of her complaint as proof of sex discrimination.

For a Title VII sex discrimination claim, Plaintiff must present sufficient indirect evidence to establish a prima facie case of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. at 792.  Under that framework, Plaintiff must show that, "[1] she is a member of a protected class, [2] she suffered an adverse employment action, and [3] the challenged action occurred under circumstances giving rise to an inference of discrimination."  *Bennett v. Windstream Communications, Inc.*, 792 F.3d at 1266 ; *Kendrick v. Penske Transp. Servs.*, Inc., 220 F.3d at 1227.  Once a Plaintiff establishes the prima facie elements, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  *Turner v. Public Service Co. of*

---

[3] *See* footnote 2.

*Colorado*, 563 F.3d at 1142.  If Defendant does so, summary judgment is warranted unless Plaintiff

shows that Defendant's proffered reason is pretextual.  *Id.*, at 1143; *Plotke v. White*, 405 F.3d at 1099.

While sex is a protected class under Title VII, Plaintiff did not suffer any adverse employment

actions.  42 U.S.C. § 2000e–2(a).   Adverse employment actions are, "significant change[s] in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits."  *Piercy v. Maketa*, 480 F.3d at

1203.  An adverse action must be more serious than a mere inconvenience or an alteration of job

responsibilities.  *Id*.  Reprimands are considered adverse employment actions only if they, "affect[] the

likelihood that the plaintiff will be terminated, undermine[] the plaintiff's current position, or affect[] the

plaintiff's future employment opportunities."  *Medina v. Income Support Div., New Mexico*, 413 F.3d at

1137.

Here, Plaintiff has not produced evidence to suggest that she was treated differently than Phillip

Dominguez or Weston Peasnal regarding either COVID-19 or NMCD's employee conduct policies.

Plaintiff has not produced evidence to demonstrate that either individual had similar, habitual patterns of

tardiness or that any difference in COVID-19 policy existed, let alone between Plaintiff and the named

individuals.  If discrepancies existed, no evidence presented suggests these are considered adverse

employment actions.  *Piercy v. Maketa*, 480 F.3d at 1203.

As to the 2013-14 incident discussed in Count I, Plaintiff's change of location in 2014 and

alleged denial of the drug court officer position do not qualify as adverse employment actions.  While

Plaintiff claims that she transferred NMCD locations in 2014, she has not provided any evidence that

this change in position was serious and/or an alteration of job responsibilities.  Furthermore, Plaintiff

requested and initiated the transfer, not NMCD.  Regarding the drug court officer position, even if

Plaintiff was offered and denied this position as she claims, she admitted that this promised position was

not a promotion, disqualifying it as a failure to promote and therefore, an adverse action.  Doc. 43-7, Ex. G, K. Ferguson Dep., 123:5-9.

The 2020 Letters of Counseling and Reprimand are not considered adverse employment actions despite plausibly being reprimands.  Both letters served as warnings as to Plaintiff's habitual tardiness and noncompliance with NMCD's employee policy.  The letters warned that if her noncompliance continued, further disciplinary action may be necessary.  Plaintiff does not offer evidence that these letters affected the likelihood of termination, undermined her position, or affected future employment opportunities, including the revocation of the Cibola job offer following her employment with NMCD. Therefore, these reprimands cannot be considered adverse employment actions.

Plaintiff was placed on administrative leave in 2020 as a result of an internal OPS investigation unrelated to the Letters of Counseling and Reprimand.  This OPS investigation involved separate misconduct allegations.  Paid administrative leave is not considered adverse employment action as required to establish a prima facie case of sex discrimination.  *Lincoln v. Maketa*, 880 F.3d 533, 542 (10th Cir. 2018).

If deemed adverse employment actions, Plaintiff has not presented evidence that these actions suggest or give rise to an inference of any discrimination, let alone sex discrimination.  *Bennett v. Windstream Communications, Inc.*, 792 F.3d at 1266*; Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d at 1227.

If Plaintiff established a prima facie case of discrimination, the burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse action(s).  Plaintiff has not presented evidence establishing differences in the enforcement of COVID-19 or timeliness policies, but rather both were enforced equally.  The 2014 transfer in question occurred at the request of Plaintiff, and the intraoffice position offer revocation, if it occurred, was not a promotion and has not been shown by

Plaintiff to have been motivated by sex discrimination in any way.  The 2020 Letters of Counseling and Reprimand and her placement on paid administrative leave did in fact serve legitimate, nondiscriminatory reasons.  Both letters served to ensure compliance with NMCD's Employee Code of Conduct and Ethics.  This was especially warranted here, given Plaintiff's pattern of violating NMCD policy.  Furthermore, Plaintiff was placed on paid administrative leave because of an internal OPS investigation regarding separate allegations of misconduct.

In short, Plaintiff has failed to plead a prima facie case of discrimination.  If Plaintiff established a prima facie case, Defendants have articulated legitimate, nondiscriminatory reasons for these actions.  Plaintiff has not established that NMCD's actions were pretextual. There is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.  The Court grants summary judgment on Counts II and III.

**IV.        Misuse of Process and Malicious Use of Process – Counts VIII and IX**

Counts VIII and IX are dismissed with prejudice.  All claims against Defendants City of Clovis and City of Clovis Police Department have already been dismissed with prejudice.  *Se*e Doc. 45. Plaintiff has agreed to dismiss both counts against the New Mexico Corrections Department.  *See* Doc. 59.  Therefore, this Court declines to grant summary judgment on these claims.

**V.        Court Declines to Exercise Supplemental Jurisdiction Over Remaining State Law Claims**

Defendants removed this case to this Court on the basis of federal question jurisdiction, and no party has asserted diversity jurisdiction.

Defendants removed this case solely on the basis of federal question jurisdiction for Counts I, II, III, and IV.  Defendants also expressly note that the Court has supplemental jurisdiction over the

remaining claims.  Doc. 60 at 5.  While Defendants contend that Plaintiff's remaining state law claims arise from the same period of employment, these claims arise from state common law or state statutes. Plaintiff's remaining state law claims do not "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).  Under the Grable doctrine, "a federal court [is] able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  That is to say, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Here, any "federal interest is not critical enough to trigger substantial-question jurisdiction because… whatever federal issues exist do not fundamentally change the state tort nature of the action." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1270 (10th Cir. 2022), cert. denied, 143 S. Ct. 1795, 215 L. Ed. 2d 678 (2023) (internal quotation marks and citation omitted).

Moreover, nothing in the record suggests that diversity jurisdiction might exist.  No party has suggested that diversity jurisdiction exists.  Defendants did not remove on the basis of diversity jurisdiction.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Furthermore, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (footnote omitted). The Court has dismissed all claims over which it has original jurisdiction. § 1367(c). The Court, in its discretion, declines to exercise supplemental jurisdiction over the state law claims.[4]

When declining to exercise supplemental jurisdiction, a district court may dismiss the state law claims without prejudice or remand the claims to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988). Because this case was removed to this court from state court, the Court finds remand of the state law claims, rather than dismissal, appropriate.

**CONCLUSION**

For the reasons stated above, the Court grants summary judgment on Plaintiff's hostile work environment claim (Count I), discrimination claim (Count II), and sexual discrimination claim (Count III). Plaintiff's misuse of process claim (Count VIII) and malicious use of process claim (Count IX) are dismissed with prejudice. Finally, the Court declines to exercise supplemental jurisdiction over the

---

[4] While retaliation is actionable under Title VII of the Civil Rights Act of 1964, Plaintiff declined to file an EEOC complaint regarding her retaliation claim in Count VI, instead pursuing solely a discrimination claim. *See* Ex. 7. Plaintiff did not specifically assert her retaliation claim under federal law in her Complaint. *See* Doc. 47, Ex. 9. Plaintiff again declined to bring her retaliation claim under federal law in her response to the Order to Show Cause, explaining that her retaliation allegation is a state law claim. *See* Doc. 59, at 3. Ultimately, the plaintiff is the master of her complaint, and she can avoid federal jurisdiction through reliance on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318, 392 (1987); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011); *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1023 (10th Cir. 2012); *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1119 (10th Cir. 2019). Therefore, to hear Plaintiff's state law retaliation claim, this Court must assert supplemental jurisdiction, which it declines to do. *Mocek v. City of Albuquerque*, 813 F.3d at 935. As such, Count VI is remanded.

remaining state law claims, and remands those claims to the Ninth Judicial District Court, Curry County, New Mexico.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 43) is hereby **GRANTED IN PART** as described above.

**IT IS FURTHER ORDERED** that the Misuse of Process and Malicious Use of Process claims (Counts VIII and IX) are dismissed with prejudice as to the remaining Defendants.

**IT IS FINALLY ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims against Defendants and **REMANDS** those state law claims to the Ninth Judicial District Court, Curry County, New Mexico.  The Clerk of Court is directed to take the necessary actions to remand this case.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE